Claude Wayne ROSS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–87–429.

Court of Criminal Appeals of Oklahoma.

March 25, 1992.

Lee Ann Jones Peters, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice–Presiding Judge:

Appellant Claude Wayne Ross was tried by a jury and convicted of the crime of Conspiracy to Commit Armed Robbery in violation of 21 O.S.1981, § 421, in Case No. CRF–86–4784 in the District Court of Oklahoma County. The Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at

forty-five (45) years imprisonment and the trial court sentenced accordingly. From this Judgment and Sentence Appellant perfected his appeal.

The Appellant raises four propositions of error: (1) he was denied effective assistance of trial counsel when his motion for separate counsel was denied; (2) the admission of his confession into evidence was the fruit of an illegal arrest; (3) fundamental error occurred when the trial court failed to instruct on the necessity of corroboration of testimony; and (4) ineffective assistance of trial counsel.

Around 11:00 p.m. on September 5, 1986, police officers responded to a call that three suspects were prowling around the Ross Elementary School at Southeast 40th and Magnolia Streets. Officer Dennis R. Buckley and his partner pulled in on the north side of the school while Officer Mike Hampton and his partner pulled in at the southeast corner of the school. When the police officers arrived, they saw three men standing near the northeast corner of the building. One person, wearing a blue pullover shirt, was holding what appeared to be a rifle or shotgun. Another person was wearing a green army jacket. The third person was wearing a reddish brown shirt. As the officers started to approach the three men, all three dropped to the ground. Then two of the men jumped up and ran. Robert Hailey, the person wearing the Army jacket, did not run but instead surrendered to the officers. However, the suspect wearing the reddish brown shirt ducked out of sight and disappeared. The man who had been carrying the shotgun left the shotgun on the ground and ran in an easterly direction across the school's playground, with Officer Kay and Hampton in pursuit. Kay and Hampton caught the man, identified as Nathan Stout, about 200 yards away. Stout was searched and a switchblade knife was found in his right rear pocket. Hailey and Stout were handcuffed and separated. Officer Buckley, while searching the area where the men had dropped to the ground, found a shotgun, a ski mask, and two bandannas, approximately ten feet from where the men were first seen.

While the officers were investigating this incident, they received a call from the police dispatcher that someone in the neighborhood had reported seeing a person getting into a small orange-colored foreign car on Southeast 40th near the school. After receiving the call, Officer Hampton noticed a car fitting that description parked directly across the street. Officer Hampton approached the car and drew his service revolver when he saw a man slumped down in the driver's seat. The Officer ordered the man to get out of the car and, after pat-searching him for weapons, Hampton handcuffed him and took him back to the school where the other two suspects were being detained. Officer Buckley then advised the man, identified as the Appellant, of his *Miranda* rights and asked him if he understood. Buckley testified that the Appellant stated that he understood and agreed to make a statement. In that statement, Appellant said that he was the wheel man who transported three men to Ross Elementary school for the purpose of robbing an Oriental family living in a house on the corner near the school. However, he did not know the family's name or address. After the statement was made, Officer Buckley advised Appellant that he was under arrest for Conspiracy to Commit Armed Robbery.

Officer Don Landes testified that on September 6, 1986, he visited Appellant in the Oklahoma City jail where he questioned him after reading him his rights. At that time, Appellant advised the Officer that he was not part of any robbery and had only gone with the other two men to commit a burglary. Any further facts will be discussed as they become relevant.

■ In his first assignment of error Appellant alleges that he was denied effective assistance of counsel by the trial court when it denied his motion for separate counsel. He claims that a conflict of interest arose when an Assistant Public Defender was appointed to represent all three co-defendants. In support of his contention Appellant cites *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426

(1978), wherein the United States Supreme Court held that failure on request to appoint separate counsel or to evaluate risks of joint representation violates the Sixth Amendment. The State argues that based upon *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. However, unlike the Appellant in this case, none of the parties in *Cuyler* lodged an objection to multiple representation. This Court has likewise taken the position that a defendant who raises no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Williams v. State*, 736 P.2d 536, 537 (Okl.Cr.1987).

A reading of the record in the present case reveals that at preliminary hearing defense counsel informed the trial court that he could not represent all three clients without a conflict of interest. A motion was filed to have separate counsel appointed on October 29, 1986, and November 7, 1986. According to the record, the motion was taken under advisement by Judge Amick on November 7, 1986, which he subsequently overruled. On December 1, 1986, co-defendants, Hailey and Stout, pled guilty. It should be noted that up until the Tuesday before the day the trial began it was thought that Appellant might also enter a plea. On the day of trial, December 3, 1986, defense counsel renewed his motion to have separate counsel appointed, arguing that as the attorney of record for each defendant he was still required to advise and counsel co-defendant's Stout and Hailey because the ten (10) days for withdrawing each guilty plea had not expired. (Tr.9) Defense counsel explained to the trial court that he could no longer effectively represent his client because he would be forced into the position of trying to cross-examine his own clients regarding confidences that were revealed to him in secrecy. According to the record, counsel for defense was initially notified during voir dire that the prosecution intended to call co-defendants, Hailey and Stout. The trial court again overruled this motion without explanation.

 We have consistently followed the United States Supreme Court in holding that joint representation of co-defendants is not a per se violation of the Sixth Amendment right to counsel guarantee. *Id.* Almost 50 years ago, in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the United States Supreme Court held that by requiring an attorney to represent two co-defendants whose interest were in conflict, the trial court had denied one of the defendants his Sixth Amendment right to effective assistance of counsel. In that case five co-defendants were tried in a joint trial for conspiracy to defraud the United States. The Court asked Glasser's attorney to represent one of the co-defendants who had become dissatisfied with his own attorney and had dismissed him. Glasser made known that he objected to the proposal but the trial judge nevertheless appointed his attorney to represent the co-defendant. After the United States Supreme Court identified the conflict of interest in *Glasser*, it declined to inquire as to whether the prejudice flowing from the conflict was harmless. Instead, based on the facts of the case, the Supreme Court ordered Glasser's conviction reversed.

Here, as in *Holloway*, a single public defender represented three co-defendants and the trial court refused to consider the appointment of separate counsel for each despite defense counsel's timely and repeated assertions that the interest of his clients conflicted. Unlike the situation in *Holloway*, the two co-defendants here did plead guilty before the trial. Nevertheless, given the circumstances in this case, it was the duty of the trial judge to either appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel.[1]

---

1. There is no indication in the record that an inquiry was made by the trial judge or that any information was disclosed to ascertain the remoteness of the risk. Although this matter was taken under advisement by Judge Amick on one occasion, the record is void of the basis of the ruling by the judge.

In contrast, an extensive inquiry was made by the trial court of the parties and counsel regarding the multiple representation of co-defendants in *United States v. Carter*, 613 F.2d 256, 260 (10th Cir.1979), *rehearing denied* March 5, 1980, and the reviewing court determined that a proper defense was presented and competent representation was provided for all co-defendants.

At issue here, is the impact of the trial court's failure to afford the Appellant the opportunity to show the potential conflict of his multiple representation, and the failure to make its findings for denying appointment of separate counsel on the record.

■ In *Holloway*, the U.S. Supreme Court concluded that to assess the impact of a conflict of interest on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Under certain circumstances the resulting error may be harmless where no prejudice results to the defendant. However, in those instances where a harmless-error rule is applied, the error occurs at trial and its scope is readily identifiable. In the case of joint representation of conflicting interests, the evil is in what the advocate finds himself compelled to refrain from doing. *Holloway 435 U.S.* at 490, 98 S.Ct. at 1181. In this case, Appellant's counsel was required to walk a fine line in his cross-examination of the co-defendants. He could not violate the attorney-client relationship as it continued to exist with co-defendant Stout. Moreover, we cannot assess the impact on the jury when Appellant's Counsel divulged during cross-examination of Stout that he represented Stout at the plea. For the foregoing reasons we find that Appellant was deprived of the right to have effective assistance of counsel. Therefore, we reverse and remand for further proceedings not inconsistent with this opinion.

At issue in Appellant's next assignment of error is the admissibility of a confession. Specifically, whether the statement made by Appellant was the fruit of an illegal arrest. We first note that at defense counsel's request, the trial court conducted an in camera hearing to determine the admissibility of the statements made by Appellant at the scene and in the city jail. At the conclusion of this hearing the trial court determined that the statements made by Appellant to Officer Buckley and Detective Landis were admissible.

■ Before a determination can be made regarding the admissibility of the statement, the point in time of the arrest must be determined. In this case, the issue is whether the arrest was made at the time Officer Hampton handcuffed and took Appellant over to the school yard, or whether it was made when Officer Buckley advised the Appellant that he was under arrest.

■ Title 22 O.S.1981, § 196, sets forth the circumstances under which a peace officer could arrest a person without a warrant:

1. For a public offense, committed or attempted in his presence.
2. When the person arrested has committed a felony, although not in his presence.
3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.
4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested.

We have previously recognized the necessity of permitting officers to temporarily detain persons in certain situations to obtain more information. *McAlpine v. State*, 604 P.2d 1258, 1259 (Okl.Cr.1980), citing *Prock v. State*, 542 P.2d 522 (Okl.Cr.1975). We also recognize that both an investigatory detention and an arrest involve significant intrusion upon the privacy of the individual. If an officer is momentarily detaining a person in order to make inquiry so as to determine his identity and obtain more information, and is in no way attempting to restrain him of his liberty or take him into custody, then the stop does not constitute an arrest, but rather is an investigatory detention. *Castellano v. State*, 585 P.2d 361 (Okl.Cr.1978). In order to constitute

an arrest, there must be some actual restraint of the individual's freedom of movement, or attempt to take the person into custody. *Id.* Appellant was not told that he was under arrest by Officer Buckley until after he had made a statement concerning his involvement in planning a robbery. However, he was handcuffed by Officer Hampton and taken to the school yard minutes before he made the statement, and there is no evidence that he was at liberty to leave after being restrained.

█ At the moment an arrest is made, the officer should have within his knowledge facts and circumstances sufficient to warrant a prudent man to believe the arrestee has committed, or was committing, a crime. *Cooks v. State*, 699 P.2d 653 (Okl. Cr.1985); *Pitts v. State*, 649 P.2d 788 (Okl. Cr.1982); *Swain v. State*, 621 P.2d 1181 (Okl.Cr.1980). Prior to taking Appellant into custody, Officer Hampton knew that three men had been seen in the schoolyard and that one, who was not the Appellant, was carrying a shotgun. The officer also knew that one of the three men had gotten away. The officer had also received information from the police dispatcher that an unidentified person in the neighborhood reported seeing a man get into a small, orange-colored foreign car in the vicinity. Officer Hampton located the vehicle and determined that the man in the car fit the description given by the unidentified caller. This information, coupled with the fact that the time and place of his arrest was also contemporaneous with the arrest of the two co-defendants, was sufficient to establish probable cause.

[8] As we have previously stated, the arresting officer's good faith is not enough to constitute probable cause, that faith must be grounded on facts which, in the judgment of the court, would make his faith reasonable. *Castellano*, 585 P.2d at 366. When Officer Hampton saw the vehicle with its lone passenger, he had enough information to detain the occupant. Therefore, we conclude that the information received by Officer Hampton following the investigative detention of Appellant did establish probable cause for the arrest.

Moreover, we find that Appellant's confession was freely and voluntarily given after a lawful arrest.

█ In his third allegation of error Appellant argues that the trial court committed fundamental error in failing to instruct on the necessity of corroboration of testimony of co-conspirators. The Appellant concedes that he failed to request the trial court to instruct the jury that the witness was a co-conspirator whose testimony must be corroborated. The record also reflects that the Appellant failed to request that a determination be made regarding the status of the witness as an accomplice. The law is clear in Oklahoma that where no objection is made at trial nor a request for an alternative instruction, then reversal on appeal can only be obtained if the instruction deprives the defendant of a fair trial. *Wofford v. State*, 646 P.2d 1300, 1302 (Okl. Cr.1982). Finding no fundamental error, this proposition is without merit.

In the remaining proposition of error Appellant alleges ineffective assistance of counsel. Because of our disposition of this case, we will not consider this remaining allegation of error.

Having identified error which requires reversal of Appellant's judgment and sentence, we REVERSE the conviction, and REMAND it for a new trial consistent with this opinion.

LANE, P.J., and PARKS and JOHNSON, JJ., concur.

BRETT, J., concurs in result.